UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KADIJA A. WEDAY, *et al.*,

                Plaintiffs,

     v.

ALEJANDRO MAYORKAS, *et al.*,

                Defendants.

CASE NO. 2:21-cv-01595-RSM-JRC

REPORT AND RECOMMENDATION

NOTED FOR: April 8, 2022

      This matter is before the Court on referral from the District Court and on defendants' motion to dismiss. Dkt. 8.

      Plaintiffs, who are citizens of Ethiopia, allege that defendants, government officials and employees of agencies including the United States Citizenship and Immigration Services ("USCIS"), have unreasonably delayed the processing of their immigration petitions by failing to schedule mandatory interviews at an appropriate consulate or embassy. Plaintiffs filed their petitions on June 24, 2019, and currently, defendants have given plaintiffs no timeframe as to when the interviews will be scheduled. Defendants move to dismiss plaintiffs' claims and argue

1    that granting plaintiffs the relief they seek would put the Court in the position of ordering the

2    State Department to restaff its embassy in Ethiopia, which they assert is an unreviewable

3    political question. Alternatively, defendants argue that plaintiffs have failed to state their claims.

4         The Court concludes that this matter does not present a nonjusticiable political question.

5    Along with their reply brief, defendants submit evidence that the embassy in Ethiopia is restaffed

6    and processing the relevant immigration petitions again. Thus, if the facts indicate that plaintiffs

7    are entitled to relief, such relief would not require the Court to interfere with the staffing of

8    embassies. Further, the Court concludes that plaintiffs have alleged enough facts to survive a

9    motion to dismiss. Defendants mostly rely on extrinsic evidence to attack plaintiffs' complaint,

10   but the Court cannot consider that evidence when deciding a motion to dismiss for failure to state

11   a claim.

12        Accordingly, the Court recommends that defendants' motion to dismiss (Dkt. 8) be

13   denied.

14                                    **BACKGROUND**

15        Plaintiffs allege the following in their complaint. Plaintiff Kadija Weday was forced to

16   flee her home in Ethiopia in August 2017 because she faced persecution. Dkt. 1 at 6. She was

17   granted asylum in the United States on March 21, 2019. *Id.* at 6. Once a person has been granted

18   asylum, she may petition for her child or spouse to be granted the same status. *See* 8 U.S.C. §

19   1158(b)(3)(A). To do so, the asylee may file a "Request for Refugee/Asylee Relative," otherwise

20   known as an I-730 petition. 8 C.F.R. § 208.21(d). If the petition is approved, USCIS "will send

21   the [petition] to the Department of State for transmission to the U.S. Embassy or Consulate

22   having jurisdiction over the area in which the asylee's spouse or child is located." *Id.*

23

24

The final step requires an officer at the appropriate embassy or consulate to verify the identities of the spouse or child and to determine that no ineligibilities apply. Dkt. 1 at 6; 9 Foreign Affairs Manual ("FAM") 203.5-4(a). Once that is completed, the child or spouse is issued travel documents and may travel to the United States. *Id.*

On June 24, 2019, plaintiff Weday filed three Form I-730 petitions with USCIS so that her husband and two children, plaintiffs Mahamud Bilal, Eliyas Yusuf, and Arafat Yusuf, who remain in Ethiopia, may be granted status in the United States as relatives of an asylee. Dkt. 1 at 7. On May 28, 2020, USCIS approved all three petitions. *Id.* However, the embassy in Addis Ababa has not scheduled them for an interview. *Id.* at 7–8.

On November 28, 2021, plaintiffs filed the instant action against various government defendants. *See* Dkt. 1. Plaintiffs bring claims for violations of the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA") and seek a writ of mandamus ordering defendants to schedule plaintiffs Mahmud Bilal, Eliyas Yusuf, and Arafat Yusuf for their interviews. *Id.* at 12. On February 1, 2022, defendants moved to dismiss all of plaintiffs' claims on jurisdictional grounds and for failure to state a claim. *See* Dkt. 8.

## DISCUSSION

### I.    Subject Matter Jurisdiction

Defendants argue that this matter should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Dkt. 8 at 7, 17.

A party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). "If the challenge to jurisdiction is a facial attack . . . the plaintiff is entitled to the safeguards similar to those applicable when a Rule 12(b)(6) motion

is made." *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012) (internal citation and quotation omitted). However, a challenge to the Court's subject matter jurisdiction on factual grounds may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989), *cert. denied*, 493 U.S. 993 (1989). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## A. Political Question

The presence of a political question deprives a court of subject matter jurisdiction. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007). "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986). If a political question is inextricable from a case, the doctrine "prevents a plaintiff's claims from proceeding to the merits." *Ahmed Salem Bin Ali Jaber v. United States*, 861 F.3d 241, 245 (D.C. Cir. 2017) (citing *Baker v. Carr*, 369 U.S. 186, 211 (1962)).

Generally, courts have "subject matter jurisdiction over claims that an agency has *unlawfully withheld* or *unreasonably delayed* the processing of immigration-related petitions." *Doe v. Risch*, 398 F. Supp. 3d 647, 655 (N.D. Cal. 2019). Defendants nevertheless argue that the Court lacks subject matter jurisdiction over plaintiffs' claims in this action because granting the relief plaintiffs seek would require the Court "to order the State Department to restaff its Embassy amid a civil war"—which defendants assert is an unreviewable political question. Dkt. 8 at 7. To support their position, defendants provide a declaration by Dale Lim, a visa policy

1    analyst, dated February 1, 2022, which states that "[o]n November 5, 2021, the State Department

2    ordered all non-emergency U.S. government employees and their family members to depart from

3    Ethiopia due to armed conflict, civil unrest and possible supply shortages."[1] Dkt. 8-1 at 3. He

4    also states that "processing of I-730 petitions at the U.S. Embassy in Addis Ababa is suspended."

5    *Id.*

6        In response, plaintiffs submitted evidence that embassy staff in Addis Ababa have

7    returned to their posts and resumed interviews. *See* Dkt. 9 at 4. On February 25, 2022,

8    defendants submitted a supplemental declaration by Mr. Lim, which appears to resolve the issue.

9    *See* Dkt. 10-1. Mr. Lim states that the ordered departure from Ethiopia ended on February 1,

10   2022, and that the embassy in Addis Ababa is currently processing I-730 petitions, although at a

11   limited capacity. *Id.* at 2–4. Because the embassy is currently processing I-730 petitions, the

12   State Department would not have to restaff its embassy in Ethiopia if the Court were to grant

13   plaintiffs relief. The Court concludes that if plaintiffs were able to prove their allegations, this

14   matter may not present a nonjusticiable political question.

15       Therefore, the Court recommends that defendants' motion to dismiss on that basis be

16   denied.

17       **B.  Mandamus Act Claim**

18       Defendants move to dismiss plaintiffs' Mandamus Act claim because they "fail to state a

19   cognizable claim under the Mandamus Act." Dkt. 8 at 17. Unlike defendants' jurisdictional

20   challenge based on the existence of a political question, which the Court construes as a factual

21   challenge, the Court construes defendants' challenge to plaintiffs' Mandamus Act claim as a

---

[1] The Court may consider this evidence because defendants present a challenge to the Court's jurisdiction based on factual grounds. *See St. Clair*, 880 F.2d at 201.

1    facial challenge. Therefore, the Court does not consider extrinsic evidence. *See San Luis &*

2    *Delta-Mendota Water Auth.*, 905 F. Supp. 2d at 1167.

3            "Mandamus is an extraordinary remedy traditionally within a district court's discretion."

4    *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997). Mandamus relief is

5    available if (1) the claim is clear and certain; (2) the official's or agency's 'duty is

6    nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt'; and (3) no

7    other adequate remedy is available." *Agua Caliente Tribe of Cupeño Indians of Pala Rsrv. v.*

8    *Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th

9    Cir. 1997)). The Ninth Circuit generally treats "the requirements for obtaining mandamus-type

10    relief under § 1361 as jurisdictional in nature." *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th

11    Cir. 2021); *see also Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) ("These

12    three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case

13    for lack of jurisdiction.")

14            Defendants argue that the Court must dismiss plaintiffs' Mandamus Act claim for two

15    reasons. They argue that plaintiffs have not identified a "clear statutory or regulatory duty that

16    Defendants owe them to process the beneficiary or issue travel documents" and that the

17    interviews plaintiffs request are not "ministerial." Dkt. 8 at 18.

18            Regarding the first reason, plaintiffs allege that defendants have unreasonably delayed the

19    interviews—not that defendants have refused to issue travel documents. *See* Dkt. 1 at 10.

20    Further, many courts have held that the pace at which immigration petitions are adjudicated is

21    not discretionary and that mandamus jurisdiction exists in such cases. *See Hong Wang v.*

22    *Chertoff*, 550 F. Supp. 2d 1253, 1256 (W.D. Wash. 2008) (collecting cases); *see also Risch*, 398

23    F. Supp. 3d at 655 ("Even where no time limits are imposed by the enabling-statute, Defendants

24

1    have a non-discretionary duty to adjudicate immigration-related petitions "within a reasonable

2    period of time.") (citing 5 U.S.C. § 555(b)). Therefore, plaintiffs have sufficiently alleged that

3    defendants owe them a duty to schedule the interviews within a reasonable time.

4           Regarding the second reason, for purposes of mandamus relief, a ministerial act is a

5    "clear, non-discretionary agency obligation to take a specific affirmative action, which obligation

6    is positively commanded and so plainly prescribed as to be free from doubt." *Independence Min.*

7    *Co., Inc. v. Babbitt*, 105 F.3d 502, 508 (9th Cir. 1997) (internal quotations and citations omitted).

8    Plaintiffs are not seeking a specific determination regarding their interviews. Rather, they are

9    asking that defendants schedule the interviews. *See* Dkt. 1 at 8–11. Plaintiffs allege that the

10   embassy must conduct the interviews and defendants do not argue that conducting the interview

11   is discretionary. *See* Dkt. 1 at 9. In fact, defendants appear to concede that they have no

12   discretion in that regard. *See* Dkt. 8 at 3 ("[Plaintiffs] must complete a secondary review,

13   including interviews, before receiving documents to travel to the United States."). As such, the

14   scheduling of the interview is ministerial.

15          Accordingly, the Court recommends that defendants' motion to dismiss plaintiffs'

16   Mandamus Act claim be denied.

17   **II.    Failure to State a Claim**

18          Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a

19   plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to

20   relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

21   (2007). The pleadings must raise the right to relief beyond the speculative level and must provide

22   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

23   will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On

24

a motion to dismiss, courts accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin,* 262 F.3d 871, 876–77 (9th Cir. 2001).

The Court notes that both parties rely on declarations to support their positions. *See* Dkts. 8-1, 9-1–4, 10-1. Although the Court can consider evidence pursuant to a Rule 12(b)(1) motion, *see Warren*, 328 F.3d at 1139, the Court cannot do the same for a Rule 12(b)(6) motion. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). Neither party addresses why the Court should consider evidence on a Rule 12(b)(6) motion. They also do not address whether defendants' motion should be converted into a motion for summary judgment, and the Court declines to do so. Therefore, the Court does not consider the extrinsic evidence submitted by the parties for the purpose of defendants' Rule 12(b)(6) motion.

### A.  APA Claims

Plaintiffs allege that defendants violated the APA because they have unreasonably delayed plaintiffs' immigration petition and because their reasons for doing so were arbitrary and capricious. *See* Dkt. 1 at 9–11. Defendants argue that plaintiffs have failed to state a claim under either theory. *See* Dkt. 8 at 10–17.

The APA requires an administrative agency to adjudicate "a matter presented to it" within a "reasonable time." 5 U.S.C. § 555(b). Where an agency fails to do so, a "reviewing court shall compel agency action unlawfully or unreasonably delayed." 5 U.S.C. § 706(1). "A

court can compel agency action under [5 U.S.C. § 706(1)] only if there is 'a specific,

unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency

has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intelligence Agency*, 811 F.3d

1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64

(2004)).

To determine whether an agency's delay in adjudicating a matter is reasonable, courts

apply the following factors:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory scheme
> may supply content for this rule of reason; (3) delays that might be reasonable in
> the sphere of economic regulation are less tolerable when human health and welfare
> are at stake; (4) the court should consider the effect of expediting delayed action on
> agency activities of a higher or competing priority; (5) the court should also take
> into account the nature and extent of the interests prejudiced by the delay; and (6)
> the court need not 'find any impropriety lurking behind agency lassitude in order
> to hold that agency action is unreasonably delayed.'

*Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting *Telecomm.*

*Research and Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984)).

In their *TRAC* factors analysis, both parties rely on extrinsic evidence. *See* Dkts. 8 at 11–

16, 9 at 7–9. The parties must rely on such evidence because applying these factors is a "fact

intensive inquiry." *Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 66 (D.D.C. 2017).

However, as previously stated, the Court does not consider extrinsic evidence in a motion to

dismiss pursuant to Rule 12(b)(6). *See Swartz*, 476 F.3d at 763. Therefore, at this early stage, it is

premature to determine whether the delay was unreasonable. *See Garcia v. Johnson*, No. 14-cv-

01775-YGR, 2014 WL 6657591, at *12 (N.D. Cal. Nov. 21, 2014) (denying motion to dismiss

that required a *TRAC* analysis); *Hui Dong v. Cuccinelli*, No. CV 20-10030-CBM-(PLAx), 2021

WL 1214512, at *4 (C.D. Cal. Mar. 2, 2021) ("[T]he Court finds it is premature to rule on the issue of whether Plaintiff has satisfied the *TRAC* test at the pleading stage as to Plaintiff's APA claim.").

Defendants also move to dismiss plaintiffs' APA claim based on arbitrary and capricious agency action. Dkt. 8 at 16–17. The APA provides that a reviewing court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Agency action is considered arbitrary and capricious if it (1) "relied on factors which Congress has not intended it to consider," (2) "entirely failed to consider an important aspect of the problem," (3) "offered an explanation for its decision that runs counter to the evidence before the agency," or (4) "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1109 (9th Cir. 2012) (internal quotation omitted).

Defendants' argument for dismissal of this claim is based on whether plaintiffs will be able to prove their case, *see* Dkt. 8 at 17, and relies on extrinsic evidence, which is inappropriate on a Rule 12(b)(6) motion. Indeed, whether defendants' delay in interviewing plaintiffs is arbitrary and capricious depends on the reasons for the delays, which will require consideration of extrinsic evidence. Accordingly, the Court concludes that plaintiffs have alleged enough to survive defendants' motion to dismiss and recommends that defendants' motion be denied.

## CONCLUSION

The Court recommends that defendants' motion to dismiss (Dkt. 8) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

1    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

2    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

3    objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

4    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

5          Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

6    matter for consideration on **April 8, 2022** as noted in the caption.

7          Dated this 22nd day of March, 2022.

8

9                                          _____
                                           J. Richard Creatura
10                                         Chief United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24